## (October 15, 1968)

In the Matter of EDWARD A. BAKER, Respondent, v. ANN C. JENSEN et al., Respondents, and ALEXANDER VITALE, Appellant.— On the court's own motion, the order herein dated October 8, 1968 is vacated, the decision slip dated the same day is withdrawn, and the following is substituted as the decision herein: Appeal from a judgment of the Supreme Court, Nassau County, dated October 3, 1968, which, *inter alia*, (1) declared valid certificates of nomination made by the State Executive Committee of the Conservative party nominating Edward A. Baker and Harold M. Spitzer for the office of Judge of the County Court, Nassau County, and (2) declared certificates of nomination by the County Executive Committee of said party to be null and void. Judgment reversed, on the law and the facts, without costs, and proceeding dismissed on the merits. In addition to the certificate of nomination filed with the Nassau County Board of Elections by the State Executive Committee of the Conservative party, two certificates were filed by the County Executive Committee of that party, nominating appellant, Anthony Vitale, for the office sought by respondent Baker. One of these latter certificates has been conceded to be invalid and the other emanated from a meeting of the County Executive Committee in Uniondale at which 14 persons were present and voted unanimously in favor of Vitale's nomination. The Board of Elections accepted the " Uniondale " County certificate and rejected the others, but the Special Term held the State certificate to be valid, directed the Board of Elections to accept it, and declared the other certificates of nomination to be null and void. Under the Election Law (§ 131, subd. 7) the nominations in question must be made either (1) by a majority of the members of the County Committee present at a meeting at which there is a quorum or (2) by a majority of such other committee as the rules of the party may provide. The Conservative party by-laws (art. VII, § 1) provide that nominations for public office may be made by the County Executive Committee and shall be valid if the County Committee does not nominate another candidate. Here the County Committee has not held its initial organizing meeting as required by the Election Law, and we have so held (*Matter of Marrin* v. *Phillips*, 30 A D 2d 926). The County Committee has not nominated another candidate and has neither adopted new rules nor amended the rules that were adopted in 1966 by its predecessor County Committee. Consequently, those rules continue in effect (see Election Law, § 15, subd. 2) as article VII thereof provides. Under the County Committee Rules (art. II, § 3) the County Executive Committee

consists of five designated officers of the County Committee [who have not yet been elected by the new County Committee]; 12 elected Nassau County assembly district leaders; 10 elected State Committeemen who are not also members of the State Executive Committee and one immediate past County Chairman. The papers presented indicate that James A. Marrin, the immediate past County Chairman, is one of the 10 eligible State Committeemen, as also are two of the elected district leaders, Walter B. Stevens and Noel C. Crowley. This reduces the membership of the County Executive Committee to 25, which figure includes the five officers of the County Committee who have yet to be designated. Upon their election at the June 18, 1968 primary as assembly district leaders and/or as eligible State committeemen, 20 of these 25 persons automatically became members of the County Executive Committee under the County Committee rules. Since the present County Executive Committee came into being immediately after the primary election (with five members thereafter to be elected by the County Committee), it is not "a creature of the county committee", as was the case in *Matter of Bauman* v. *Fusco* (45 Misc 2d 326, 328–329, affd. 23 A D 2d 404), where all members of the County Executive Committee were elected by the County Committee and none was voted for by the electorate. Clearly, the present County Executive Committee is not a predecessor or "holdover" committee lacking power to make nominations after election of a new County Committee (cf. *Matter of Torchin* v. *Cohen,* 286 N. Y. 544, 548); instead it was a viable body which automatically came into being following the June 18, 1968 primary election and was capable of functioning thereafter in accordance with the County Committee rules, which provide (art. V, § 4): "Subsequent to the initial organizing meeting" a quorum of the County Committee and all subcommittees thereof shall consist of 50% of the *whole membership* of any such committee. Although this provision is inapplicable, since we have previously held there was no valid initial organizing meeting (see *Matter of Marrin* v. *Phillips, supra*), a quorum of the County Executive Committee is, under section 41 of the General Construction Law, deemed to be a majority of the total number which the committee would have if there were no vacancies and if no member were disqualified from acting. Since the County Executive Committee consists of 25 members, a quorum is clearly 13. Of the 14 persons present at the meeting that resulted in the certificate that has been approved by the Board of Elections, one (James A. Shields) was a "holdover" officer of the predecessor County Committee who had been elected in 1966. Under the party rules Shields is not a member of the present Executive Committee and has no standing as a member of the predecessor Executive Committee (cf. *Matter of Torchin* v. *Cohen, supra*; *Matter of Bauman* v. *Fusco, supra*). The 13 others present were members of the County Executive Committee and hence constituted a quorum. Consequently, the "Uniondale" certificate filed by that committee is valid and was properly accepted by the Board of Elections. The Rules and Regulations of the Conservative party (art. IX, § 2) provide that unless otherwise required by law nominations in the circumstances here present shall be made by the State Executive Committee, provided that, if the elective office falls within a county which has elected a Conservative party County Committee pursuant to the Election Law, and if the rules of said County Committee make provision for the filling of such vacancy, the vacancy shall be filled in accordance with that provision. Here, the elective office falls within Nassau County, which has elected a Conservative pary County Committee pursuant to the Election Law. Also, the rules of such County Committee make provision for the filling of the vacancy by the County Executive Committee. Consequently, the vacancy was properly

filled by the County Executive Committee. The entire philosophy of our party system of nominations and elections is intended to reserve to the units of election the right to make nominations to fill vacancies. It is not in the interest of the democratic process that a State Committee meeting in Albany, or somewhere else, should have the power to select the candidates for local offices in the various cities, villages, towns and counties in the State, as against the wish of the members of the party resident in the units which are to be served by the public officials sought to be nominated. Munder and Martuscello, JJ., concur; Benjamin, J., concurs for reversal, without costs, and dismissal of the proceeding, with the following memorandum: Although I agree with the result reached, it is my opinion that under the County Committee rules (art. III, § 1) the officers of the predecessor County Committee, who were elected in 1966, were to continue to hold office " for two years or until their successors are duly chosen." So far as the record discloses, the successors of these officers have not been chosen by the present County Committee and hence they continue in office. Since only two of the " holdover " 1966 officers of the County Committee have not been elected as Nassau County assembly district leaders or as eligible State Committeemen (i.e., Barbara A. Herber and James A. Shields), the County Executive Committee consisted, at the time of the " Uniondale " meeting, of these two " holdover " County Committee officers, the 12 district leaders and the 8 State Committeemen, making a total membership of 22 at that time. Since Shields was present at the " Uniondale " meeting and since he was a member of the County Executive Committee, he must be counted. In my opinion there was more than a minimal quorum present, namely, 14 out of 22. Brennan, Acting P. J., and Rabin, J., dissent and vote to affirm. Motion by appellant for a stay dismissed as academic in view of the determination of the appeal decided herewith. Brennan, Acting P. J., Rabin, Benjamin, Munder and Martuscello, JJ., concur.